ATTALA WAREHOUSE & COMPRESS Co. v. J. N. ALEXANDER MERCANTILE Co.*

(Division B. Jan. 26, 1925. Suggestion of Error Overruled Feb. 23, 1925.)

[103 So. 779. No. 24571.]

1. LIMITATION OF ACTIONS. *Contract held unwritten one within three-year statute of limitations.*

   In an action by a patron of a compress company for damages for failing to execute a "turn down order" for cotton where the compress receipts issued for such cotton do not contain the contract sued on but such contract rests entirely in paroi, the three-year statute of limitation, section 3099, Code of 1906 (section 2463, Hemingway's Code), applies, and not the six-year statute, section 3097, Code of 1906 (section 2461, Hemingway's Code).

2. BAILMENT. *Measure of damages for delay in preparing and delivering property to owner to be put on market, stated; showing necessary by one suing for special damages for delay in preparing and delivering personal property to be put on market, stated.*

   For the breach of a contract to prepare personal property and deliver to the owner to be put on the market, for delay in so preparing and delivering, the measure of damages is the difference between the market price of such property at the time delivery is due and its market price at the time delivery is made, provided the latter is less than the former, and in addition any special damages suffered by the plaintiff may be recovered when shown to have been within the contemplation of the parties, but in order for the plaintiff to make out a case for special damages which are alone sued for, he must show that at the time delivery is made the market has not gone in his favor to such an extent as to recoup such special damages.

   ---
   *Headnotes 1. Limitation of Actions, 25 Cyc., p. 1042; 2. Bailments, 6 C. J., sections 154, 170 (1926 Anno.).

Appeal from circuit court of Attala county.

Hon. T. L. Lamb, Judge.

Action by the J. N. Alexander Mercantile Company against the Attala Warehouse & Compress Company. From judgment for plaintiff, defendant appeals. Reversed, and judgment entered.

*S. L. Dodd, Fulton Thompson* and *R. H. & J. H. Thompson,* for appellant.

In claiming that the three-year statute of limitations (sec. 3099, Code of 1906) is applicable to this case, we are not ignorant of the fact that this court has decided that where the writing, even if unsigned by the party sought to be charged, affirmed facts from which the law would imply an obligation by the party sought to be charged, a suit thereon could be maintained as if the suit was upon a written contract barred by the six-year and not the three-year statute.

Such cases are *Washington* v. *Soria,* 73 Miss. 665, and *Fowlkes* v. *Lee,* 84 Miss. 509. In each of those cases lands were sold upon a credit, promissory notes or like instruments were not given by the purchaser evidencing a promise to pay the purchase money, but the deeds in each case, accepted by the purchaser, affirmed that the lands were sold for a designated sum of money. Suits were brought in each case to collect the purchase money after the expiration of three years but within six years from the date of the respective deeds. This court held that the recitals of the deeds took the cases out of the statute of frauds, and were written evidence showing the amount of the purchase money and that the law inferred from the recitals a promise by the grantee to pay the same to the grantor.

A case more like the one at bar is *Foote* v. *Farmer,* 71 Miss. 148. Here the court held that to take a contract out of the three-year statute of limitations, there must be a writing evidencing an acknowledgment of indebtedness or promising to pay in such terms as to make any sup-

plementary evidence unnecessary. In the suit at bar every word spoken by this court in the *Foote* v. *Farmer* case is applicable to the warehouse receipts offered in evidence.

Another case fairly applicable to the one at bar is *Pate Lumber Co.* v. *Southern R. Co.*, 115 Miss. 402, s. c. 76 So. 481, wherein this court held that the writings introduced in evidence did not take the case out of the three-year statute of limitations, and so the case of *Warren-Godwin Lumber Co.* v. *Lumber Mineral Co.*, 82 So. 257, in which the suit was based on a contract implied by law. See also *Hembree* v. *Johnson*, 119 Miss. 204, s. c., 80 So. 544.

The court will note the difference between the statute of 1876, page 252, construed in *Musgrave* v. *Jackson*, 59 Miss. 390, and the present three-year statute of limitations. And the court will not overlook the fact that the declaration in the case at bar was never amended so as to make it a suit upon the receipts, although leave was granted the plaintiff to so amend it, if it desired.

## II.

THE WRONG MEASURE OF DAMAGES ADOPTED BY THE COURT BELOW. Even if we be mistaken in claiming that the three-year statute of limitations was a perfect defense to this suit in so far as concerns the four hundred and twenty-six bales of cotton hereinbefore mentioned and which were shipped to Memphis, still the judgment of the court below should be reversed because it authorized an award of damages upon the wrong measure. The court below erroneously held that the freight paid by plaintiff upon its cotton from Kosciusko to Memphis was the true measure of damages if the plaintiff were entitled to recovery. If freight to Memphis were the proper measure of damages, the freight to any other point to which plaintiff might have shipped the cotton would be a proper measure.

Do not overlook the fact that the only damages plead-
ed as to the cotton now under consideration is for in-
surance on the cotton and for interest paid by somebody,
presumably the plaintiff, to somebody else, presumably
the bank. If these alleged damages were not recoverable
then nothing was recoverable, not even nominal damages.

We will now consider these alleged items of damages
separately. What is insurance? It is not the property
made its subject-matter. This court decided in *Smith* v.
*Ratcliff*, 66 Miss. 683, that money due on a fire insurance
policy is the result of a personal contract of indemnity
against the loss by fire of the property, commonly but
improperly, assumed to be insured; property is not in-
sured, the owner is insured.

Having received the consideration, a valuable one, for
the money paid for insurance, by what right can plain-
tiff now claim that defendant should be held liable there-
for? The conception of its recovery by plaintiff in this
case seems to be preposterous. Plaintiff was not re-
quired to insure the cotton; it did so for its own advan-
tage and received and enjoyed the advantage; it was in-
sured against loss had the cotton been destroyed by fire.

The charges for interest. Interest is the damages al-
lowed by law for the non-payment of money when due,
or for the use of money owing but not yet due. There can
be no interest unless there is a principal debt, and the
principal debt must be for a liquidated and ascertained
amount. The defendant did not owe any debt to the
plaintiff; while this suit is upon contract, an unwritten
contract as hereinbefore shown, yet, assuming its breach,
the amount due, if any, for its breach was wholly unas-
certained and unliquidated, before the verdict of the
jury was rendered, and interest thereon as such could
be claimed only after the verdict and judgment were ren-
dered.

The subject-matter of interest paid the bank by plain-
tiff was too remote from the facts pleaded in the declara-
tion to be recovered in this case. If the failure of A to
pay or to perform a duty owed to B thereby causing B

to fail or be unable to pay C imposed liabilities on A. *et seq.,* there would be an unending chain of lawsuits in this country which would be disastrous to business and prohibit prosperity.

We earnestly ask the court to reverse the erroneous and unjust judgment of the court below, and pray a final judgment of this court in appellant's favor.

*D. E. Crawley* and *J. G. Smythe,* for appellee.

The Attala Warehouse & Compress Company at the time this suit was instituted and for many years theretofore was engaged in the business of receiving for storage, storing, lining out for sampling and inspection, compressing and loading on railroad cars cotton for its various customers, and for each of these services so performed received a certain fee, which fee or charge varied with the season. The only written contract or undertaking issued by the Warehouse & Compress Company consisted of the receipt issued by it for each bale of cotton as the cotton was received by the company. It was just as much the business of the Compress Company to line cotton out for sampling and inspection as it was the duty of the Compress Company to compress cotton, or to store same safely after its receipt. Each service performed was a part and a parcel of the company's business and it undertook to perform each service when it received the cotton for storage.

The receipt issued by the Warehouse and Compress Company, omitting the number, date, etc., is as follows: "Attala Warehouse & Compress Company, Number ——, Kosciusko, Mississippi, —— (for the date) received of the J. N. Alexander Mercantile Company, one bale of cotton, Marked "A," Number ——, weight ——, remarks ——, (Signed) Attala Warehouse & Compress Company, by W. D. Musselwhite, Weigher. Not responsible for loss or damage by fire or water, but will provide insurance when requested. This bale of cotton to

be delivered only on return of this receipt and the payment of charges."

It is the contention of the Mercantile Company that the Warehouse & Compress Company agreed to receive for storage, to store, to line out, to compress and to deliver each and every bale of cotton stored by the Mercantile Company with the Warehouse & Compress Company, and on demand, to perform these services within a reasonable time. As we see it the question baldly stated is—Whether or not the Compress Company was under any obligation to compress the cotton of the Mercantile Company, and if so, was this obligation a part and a parcel of the Compress Company's contract to "deliver" the cotton of the Mercantile Company described in this receipt.

In so far as any question of fact is concerned we take it that the verdict of the jury has removed that beyond the pale of controversy. We shall therefore address ourselves to the question of law. It is our contention that the six-year statute of limitations is applicable and not the three-year statute. We contend that this is not a suit on an open account, or stated account not acknowledged in writing signed by the debtor, neither is it a suit on an unwritten contract express or implied.

This suit is founded upon an express contract to store and deliver certain bales of cotton. It makes no difference whether the receipt stated the time within which delivery was to be made or not. It makes no difference whether the receipt stated the manner in which delivery was to be made or not. It makes no difference whether the receipt stated the charge that was to be made for these services or not. It makes no difference whether the receipt stated how and when these various services were to be performed. The promise to perform these things according to the undertaking is implied by law, but it is a promise to perform a written and not an unwritten contract.

In support of our contention see: *Masonic Benefit Association* v. *Bank,* 55 So. 412; *Washington* v. *Soria,* 73

Miss. 665.; *Fowlkes* v. *Lee,* 84 Miss. 509; *Cook* v. *Abernathy,* 77 Miss. 872; *Ala. Ry. Co.* v. *Wilson Mercantile Co.,* 63 So. 35; *Hill* v. *Southern Ry. Co.,* 60 So. 450; *L. & N. R. R. Co.* v. *McKenzie,* 5 Ala. App. 605, 59 So. 345; 1 Cyc. 363 D; *Railroad Co.* v. *Lindsay,* 4 Wall. 650, 18 L. Ed. 382; *Illinois Central R. R. Co.* v. *Jackson Oil & Refining Co.,* 111 Miss. 320.

It is our contention here, that the law implies the obligation to deliver the cotton compressed, and the contract evidenced by the Compress Company's receipt is the contract in writing so to do, and that the statute of limitations applicable is the six-year statute cited above. *Musgrove* v. *Jackson,* 59 Miss. 390; *Madison County* v. *Collier,* 79 Miss. 220, 30 So. 610; *Lindenmeyer* v. *Gunst,* 70 Miss. 639, 13 So. 252, 35 Am. St. Rep. 685.

## II.

MEASURE OF DAMAGES. We earnestly submit that in this instance the proper measure of damages was what it took to put the cotton to the nearest available market, and this sum the Mercantile Company is entitled to recover from the Compress Company. See *Vicksburg, etc., Ry. Co.* v. *Ragsdale,* 46 Miss. 458.

We submit that the true measure of damages in this case is interest on the total value of the four hundred bales of cotton and the insurance charges thereon during the period of delay. The Mercantile Company, however, did not demand the entire pound of flesh, but was content to ask for the return of the interest expended by it on the overdraft and the insurance premiums paid by it to the insurance company.

We submit that the natural and probable damages which flowed from the breach of the Compress Company's undertaking in this case, was the interest that the Mercantile Company had to pay on its overdraft on this four hundred bales of cotton, and the insurance premiums that it had to expend. In other words the expense that the Mercantile Company was put to in

carrying this cotton pending the compliance on the part of the Compress Company with the demand made by the Mercantile Company to compress this cotton and deliver it to Falk.

ANDERSON, J., delivered the opinion of the court.

J. N. Alexander Mercantile Company, a corporation under the laws of this state engaged in the mercantile business at Kosciusko, in Attala county, including the purchase and sale of cotton, sued appellant, Attala Warehouse & Compress Company, a corporation under the laws of this state, also located at Kosciusko, for damages claimed to have been suffered by appellee on account of appellant's breach of contract in failing to "line up" for sampling, grading, inspection, sale and compression for shipment eight hundred and twenty-six bales of cotton belonging to appellee which had been stored in appellant's warehouse for said purposes. There was a trial before a jury and a verdict for appellee, followed by a judgment, from which appellant prosecutes this appeal.

At the conclusion of the evidence appellant requested a directed verdict in its favor, which was refused by the court. In our view this is the only assignment of error that should be considered. The controlling facts in the case are substantially as follows: During the cotton season of 1919-20 appellant was engaged in warehousing and compressing cotton, and in connection therewith when its patrons desired to make sales of cotton stored with it, appellant, on their "turn down orders," undertook and agreed to separate and line up their cotton so that it could be sampled, graded, and inspected by prospective buyers, and when sales were made to compress such cotton for loading and shipment; and to promptly and within a reasonable time execute such "turn down orders." When its patrons stored cotton with it for said

purposes, appellant gave a receipt in the following form, filling out the blanks therein and signing the same:

"Attala Warehouse and Compress Company, number ———, Kosciusko, Mississippi, (date) Received of the J. N. Alexander Mercantile Company, one bale of cotton, marked A, number ———, weight ———, remarks ———,

"(Signed)

"Attala Warehouse & Compress Co.

"By D. W. Musselwhite, Weigher.

"Not responsible for loss or damage by fire or water, but will provide insurance when requested. This bale of cotton to be delivered only on return of this receipt and the payment of charges."

The stipulations in such receipts, however, did not embody, as will be seen, the undertakings and obligations of appellant with reference to executing the "turn down orders" of its patrons. Appellee's evidence tended to show, however, that that obligation and duty went with every storage of cotton by its patrons; that if not express it was at least a tacit agreement between the parties. It was a part of appellant's services to its patrons covered by its charges. During the cotton season of 1919-20 appellee stored with appellant something like two thousand bales of cotton. The suit in this case grows out of the handling of two separate lots of cotton by appellant, one for four hundred and twenty-six bales and another for four hundred bales.

Appellee gave appellant first a "turn down order" for four hundred and twenty-six bales of cotton. Appellee alleged in its declaration, and its evidence tended to show, that appellant breached its contract of storage and handling in failing within a reasonable time to line up this four hundred and twenty-six bales of cotton for sampling, grading, inspection, sale, and compression; that on account of appellant's failure to perform its contract in that respect, appellee shipped the four hundred and twenty-six bales of cotton flat to Stewart-Gwynne & Co., Memphis, Tenn., that is, they shipped it without its having been compressed, and Stewart-Gwynne & Co. sold

it on appellee's account in the Memphis market, where it was compressed and handled as it should have been compressed and handled by appellant at Kosciusko. The freight on this cotton from Kosciusko to Memphis was one thousand two hundred seventy-five dollars and ninety-one cents, and the charges for loading it out for shipment were two hundred and thirteen dollars making a total of one thousand four hundred eighty-eight dollars and ninety-one cents. These charges alone constituted the damages claimed by appellee on account of appellant's alleged breach of its contract with reference to the four hundred and twenty-six bales of cotton. The whole transaction with reference to this lot of cotton, including the shipment by appellee to Stewart-Gwynne & Co. at Memphis, took place more than three years before the beginning of this suit by the appellee. During the same cotton season, but later in the season, appellee gave appellant a "turn down order" for four hundred bales of its cotton for delivery to A. B. Falk. Appellee charged in its declaration, and its evidence tended to show, that appellant breached its contract to promptly and within a reasonable time line up this lot of cotton for the purpose of inspection, sampling, compression, and delivery, and that on account of such failure on the part of appellant appellee suffered damages for which it sued as follows: Appellee's bank had furnished the money to buy this lot of cotton for which appellee was indebted and on which it was paying interest. That the delay on the part of appellant caused appellee to pay on the said indebtedness additional interest of five hundred eighty-two dollars and eighty cents. That also during the time of such delay appellee had to keep the cotton insured, which cost him two hundred twenty-nine dollars and fourteen cents. The cause of action as to this lot of cotton accrued to appellee within three years of the suit. In addition to the general issue, appellant pleaded specially the three-year statute of limitations as to the damages claimed on account of appellant's breach of contract in failing to deliver the four hundred and twenty-six bales of cotton

within a reasonable time. The cause of action as to this lot accrued more than three years before suit was begun.

·We will consider first the question whether the claim of appellee for damages growing out of the handling of the four hundred and twenty-six bales of cotton was barred by the statute of limitation. Appellant contends that the three-year statute of limitation applies, while appellee contends that the six-year statute applies. The three-year statute provides, among other things, that actions "on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrues and not after." Section 3099, Code of 1906; section 2463, Hemingway's Code. The six-year statute provides that all actions for which no other period of limitation is prescribed shall be commenced within the six years next after the cause of such action accrued and not after. Section 3097, Code of 1906; section 2461, Hemingway's Code. The warehouse receipts issued by appellant to appellee for the cotton in question are exhibited with the declaration. Appellee contends that they are the basis of its action; that therefore the contract between the parties was in writing, and the six-year statute of limitation applies. On the other hand, appellant contends that the warehouse receipts do not contain the contract upon which appellee sued, but that it rests entirely in parol. It should be kept distinctly in mind exactly the contract appellee relies upon. It was that appellant, on receiving "turn down orders" for this lot of cotton would fail, refuse and neglect to line it up promptly and within a reasonable time for sampling, grading, inspection, and shipment. The receipt issued, it will be observed, has no provision whatever with reference to such an obligation on the part of appellant. It simply acknowledges the receipt of so much cotton, the date, weight, marks of the cotton, and a notation that appellant will not be responsible for loss or damages by fire or water and will provide insurance when requested and deliver the cotton only on the return of the receipt

139 Miss.—40.

and payment of charges. The entire contract on which appellee relies rests in parol. It is an express contract, it is true; but it is an unwritten contract. There is no stipulation or provision in the receipt whatever which in the remotest refers to appellant's undertaking which was breached and which was the basis of appellee's suit. We hold therefore that this question is controlled by *Foote* v. *Farmer,* 71 Miss. 148, 14 So. 445; *Pate Lbr. Co.* v. *So. Ry. Co.,* 115 Miss., 402, 76 So. 481; *Warren Godwin Lbr. Co.* v. *Lumber & Mineral Co.,* 120 Miss. 346, 82 So. 257; *Hembree* v. *Johnson,* 119 Miss. 204, 80 So. 554.

Appellee argues that the question is decided in its favor by *I. C. R. Co.* v. *Jackson Oil & Refining Co.,* 111 Miss. 320, 71 So. 568. The facts in that case were that the railroad company, the defendant, transported a car of cotton seed under a bill of lading providing for delivery to the plaintiff. Some of the seed were lost in transit. It was held that the suit for the loss of the seed was based on a written contract, the bill of lading, which was a contract to deliver the seed to the plaintiff, which was breached, and that the six-year statute of limitation applied, and not the three-year statute. Plainly in that case there was a written contract to deliver the seed. They were not delivered; therefore the contract was breached. Clearly the six-year statute applied and not the three-year statute. In that case the undertaking and obligation of the railroad company was set out in the writing, the bill of lading. In the present case the writing, the warehouse receipt, is silent as to any undertaking or obligation on the part of appellant to do the things with reference to appellee's cotton which appellee claimed appellant failed to do. We hold therefore that the claim growing out of the handling of the first lot of cotton was barred by the three-year statute of limitation.

Appellant contends that appellee failed in its evidence to make out a case for any damages whatever growing out of the handling of either of the lots of cotton. Appellant argues that the breach of contract upon which

appellee relies is simply a failure on the part of appellant to prepare the cotton for the market and delivery to appellee or its vendee within a reasonable time, and that the measure of appellee's damages is the difference in the market price of the cotton at the time and place it should have been delivered and the market price at the time and place it was delivered, provided the latter price was less than the former. Appellee concedes that that is the general rule as to damages for nondelivery, but contends that notwithstanding it was entitled to the special damages which were alleged and proven in this case. It is true that the measure of damages for a breach of contract to deliver personal property which is intended for sale in the market in a case like this is the difference in the market price at the time and place delivery was due and the market price at the time and place delivery was made, provided the latter price is less than the former. It is also true that in a proper case in addition to such general damages the plaintiff might be entitled to recover special damages shown to have been brought to the attention of the defendant and therefore in the contemplation of the parties. In the present case the appellee sought alone to recover special damages, the freight and loading charges on the lot of cotton shipped to Memphis and the interest and insurance charges on the lot contracted to be sold to Falk. In such a case can there be a recovery for special damages unless the plaintiff shows that such special damages have not been recouped in whole or in part by an advance in the market price at the time delivery is made over the market price when delivery was due? We think not. The burden was on appellee to make out his case both on the issue of liability and on the issue of damages. The purpose of awarding actual damages for a breach of contract is to make the plaintiff whole. It is to compensate him for his loss. It is not for the purpose of giving him a good bargain on account of the wrong done him. Appellee not only failed to show by its evidence whether it lost or made money by appellant's breach of the contract, but

objected to evidence sought to be brought out by appellant for the purpose of developing that fact. Certainly appellee would not be entitled to recover special damages if the delay in the delivery of the cotton profited appellee more than the special damages proved. We hold that appellee stopped with its evidence before it made out a case. The trial court should have directed a verdict for appellant on this ground as to both lots of cotton.

*Reversed, and judgment here.*